IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  14-cv-00966-LTB

PAUL A. OSBORN,

              Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

              Defendant.
_____

ORDER
_____

        Plaintiff, Paul A. Osborn, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying his application for supplemental security income, filed

pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383c.  Jurisdiction is proper

under 42 U.S.C. §405(g).  Oral argument would not materially assist me in the determination of

this appeal.  After consideration of the parties' briefs, as well as the administrative record, I

AFFIRM the Commissioner's final order.

I.  STATEMENT OF THE CASE

        Plaintiff seeks judicial review of the Commissioner's decision denying his application for

supplemental security income filed in August of 2012. [Administrative Record ("AR") 16, 129]

After the application was initially denied on April 11, 2013 [AR 64], an evidentiary hearing was

held on June 24, 2013. [AR 29]  An Administrative Law Judge ("ALJ") issued a written ruling

on June 27, 2013. [AR 16]  In that ruling the ALJ denied his application on the basis that he was

not disabled because Plaintiff had the residual functional capacity ("RFC") to perform work

existing in significant numbers in the national economy (Step Five).  [AR 16-25]  The SSA

Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's

determination, making the SSA Commissioner's denial final for the purpose of judicial review.

[AR 1]  *See* 20 C.F.R. §416.1481.  Plaintiff timely filed his complaint with this court seeking

review of the Commissioner's final decision.

## II. FACTS

Plaintiff was born on August 6, 1991. [AR 33]  He was twenty-one years old on the date

of the ALJ's decision, and had obtained his GED. [AR 21,35]  Plaintiff has no past relevant

work. [AR 158-59, 182]  In his application, Plaintiff alleged he is disabled due to bipolar II

disorder, panic attacks, hallucinations, PTSD, and major depression. [AR 154]  He indicated that

he became disabled commencing on January 1, 2005, but his alleged onset date was

subsequently  amended to August 28, 2012 – the application date – as SSI benefits are not

payable prior to the month following the month in which the application was filed pursuant to 20

C.F.R. §416.200 and §416.202(g). [AR 16]

### A.  Prior Medical Evidence

The medical records prior to Plaintiff's application date reveal that he suffered from

various mental problems and had been diagnosed with bipolar disorder, adjustment disorder,

depression, anxiety and marijuana abuse. [AR 273, 277, 283]  It appears that Plaintiff had

received on and off treatment for his mental health issues, starting in 2007 at age 15, from

psychologist Don Marinelli, Ph.D. [AR 268-99]  The records also reveal that the year prior to his

application date for SSI benefits, Plaintiff received psychiatric treatment/medication

management from Joey Learner, M.D. (from July 2011 through Feb 2012). [AR 259-67]

2

Also during the year before he applied, Plaintiff was placed on two psychiatric holds at Boulder Community Hospital. [AR 209, 231]  On October 10, 2011 he was involuntarily held for suicidal and homicidal threats. [AR 208-21]  At discharge, on October 13, 2011, he had arranged for intake at Centennial Peaks Hospital for intensive outpatient treatment.  His diagnosis upon discharge was bipolar disorder, mixed, cannabis dependence, and his Global Assessment of Functioning ("GAF") score was assessed at 60. [AR 209]  On February 19, 2012, Plaintiff was placed on a 72-hour mental health hold for increased agitation, anger and some violence after discontinuing his medications and 6 months of homelessness. [AR 230-42]  Upon discharge, on February 23, 2012, his diagnosis was bipolar disorder, most recent episode mixed, and an assessed GAF score of 55.  He was to followup with Centennial Peaks Hospital. [AR 231]

The records from the outpatient program at Centennial Peaks reveal only an initial assessment on February 27, 2012, and then an unsigned treatment plan on March 5, 2012. [AR 243-58] The discharge notes indicate that Plaintiff was not able to complete the program as he needs intensive case management and mental health treatment. The discharge diagnosis was cannabis dependence, and bipolar D/O, with as assessed GAF of 40. [AR 244]

**B.  Relevant Medical Records**

The medical records for the time period after Plaintiff's application was filed are minimal.  On October 20, 2012, his psychologist, Dr. Marinelli, authored a "To Whom it May Concern" letter indicating his opinion that "[w]hen compliant with his treatment plan, especially his medication regiment, [Plaintiff] can function safely and appropriately in the community. However, his high levels of anxiety and depression and his low self-esteem significantly interfere with his ability to consistently participate in young adulthood." [AR 269]

3

In March of 2013, Plaintiff underwent a psychological examination with consultive

examiner Stuart Kutz, Ph.D. [AR 301-07]  After a mental status exam, Dr. Kutz indicated:

> Mentally, he certainly seems capable of basic activities of daily living as well as
> chores, although his underlying personality disorder and tendency towards
> instability may make this less than optimal at times.  However, . . . he functions
> rather well in a structured environment and where his needs are met. And so he is
> capable of functioning at a higher level than what he seems to present. [AR 307]

Dr. Kutz indicated Plaintiff's primary diagnosis as a personality disorder, NOS, with

borderline features.  He also diagnosed a mood disorder, NOS and anxiety disorder, NOS.  He

assessed a GAF score of 55 "indicating a moderate level of social and occupational impairment"

and noted that "[r]elative to a competitive work setting throughout an eight-hour day, his

attention/concentration, persistence and pace in task completion, and social adaptation would

seem moderately impaired." [AR 307]

Douglas Hanze, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records

and opined, at the initial determination stage, that:

> [Plaintiff's] symptoms may interfere with completion of a normal workday or
> workweek or may cause inconsistent pace.  However, when work does not require
> more than simple instructions, ordinary routines and simple decision making,
> limitations of attendance and pace will not prevent the completion of a normal
> workday/workweek or significantly reduce pace.  [Plaintiff] can perform at a
> consistent pace without an unreasonable number and length of rest periods when
> work demands are within [RFC] restrictions. [He] should have limited
> interpersonal contact. [AR 59]

**C.  Hearing Testimony:**

At the hearing on this matter, Plaintiff testified that he had been diagnosed with post-

traumatic stress disorder (PTSD), bipolar disorder, depression, panic attacks, and anxiety, and

that he was last hospitalized because he was homeless, not taking his medications, and having problems with depression. [AR 36-38]

Plaintiff testified that he had a driver's license, but did not drive because he got panic attacks, trouble focusing, had hallucinations, and that he had not left his apartment in a year. [AR 34-36, 45-46]  When asked about his medications, he indicated that he had stopped taking them and was instead using dietary supplements, which he thought helped a lot. [AR 36]  He indicated that he keeps appointments with his therapist, but that they were conducted over the phone because he has problems leaving the house. [AR 45-6] Plaintiff testified that he issues with short-term memory and getting along with other people, and that he had daily panic attacks which last from 45 minutes to three hours. [AR 39-40]  He indicated that has hallucinations and he sees "things other people don't" all the time. [AR 41]

Plaintiff testified that he showers daily, but doesn't groom himself due his low self-esteem. [AR 41]  He goes to the grocery store once or twice a month, and cooks his own dinner, but does not use a stove. [AR 41-42]  He receives help cleaning his apartment from his parents. [AR 42]  He also testified that he spent an hour or two on the computer every day. [AR 42-3]  He indicated he is not able to enjoy his hobbies of playing guitar or skateboarding, but he can care for his pet cat. [AR 43-4]

A vocational expert also testified. [AR 46]  She testified that a hypothetical individual of Plaintiff's age, education, and past work, and RFC that was limited to:  "simple, routine, and repetitive work with a maximum SVP-2;" "[c]ould not perform at a production rate pace" but could "perform goal-oriented work;" "[o]ccasional interaction with supervisors and coworkers;" "[n]o interaction with the public;" and "[c]an tolerate few changes in the routin[e] work setting"

could work as an industrial cleaner, floor waxer, laundry worker, and cleaner housekeeper. [AR 47-8]

## II. LAW

I review the ALJ's application of the five-step sequential evaluation process used to determine whether a claimant is disabled under Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §416.920(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case

6

of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the date he filed his application (Step One). [AR 18]  The ALJ further determined that Plaintiff had the following severe impairments:  bipolar disorder and cannabis dependence (Step Two), but that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 18-19]

The ALJ then determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but that he cannot climb ladders or scaffolds or work at unprotected heights. He is also limited to simple, repetitive and routine tasks with a maximum of SVP of 2, and he cannot perform at a production rate pace, although he can perform goal-oriented work.  Finally, he can have only occasional interaction with supervisors and co-workers, but no interaction with the public, and he can tolerate few changes in a routine work setting. [AR 20]  After ruling that Plaintiff had no past relevant work (Step Four), the ALJ went on to determine that Plaintiff could perform work existing in significant numbers in the national economy considering his age, education, work experience and RFC (Step Five). [AR 23]  As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 24-25]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996). Thus, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993).

## VI.  ISSUES ON APPEAL

**A.  Assessed Impairments**

I first address Plaintiff's contention that the ALJ erred when assessing his mental impairments – specifically his anxiety and personality disorder – and concluding that he did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment at Step Three of the sequential process.

At Step Two, the ALJ found that Plaintiff had the severe impairments of bipolar disorder and cannabis dependence. [AR 18]  The ALJ also noted Plaintiff's allegation of disability due to post-traumatic stress disorder (PTSD), but found that "no definitive diagnosis of this impairment from an acceptable medical source is present in the record." [AR 18]  Finally, the ALJ determined that Plaintiff's "diagnoses of anxiety and personality disorder are better addressed" under the assessed severe mental impairments of bipolar disorder and cannabis dependence. [AR 18]  The ALJ then concluded, at Step Three of the sequential process, that Plaintiff's mental impairments do not meet or medically equal a listed impairment. [AR 18]

Plaintiff asserts that the ALJ's analysis failed to adequately consider his medically determinable mental impairments of anxiety (under Listing 12.06) and personality disorder (under Listing 12.08).  *See* 20 C.F.R. part 404, subpart P, appendix 1.  Specifically, he argues that the ALJ's failure to specifically address these impairments – by instead determining that they are "better assessed" under the Listings for bipolar disorder (Listing 12.04) and cannabis dependence (Listing 12.09) – constitutes error because the ALJ was required to consider all of Plaintiff's medically determinable impairments, both singly and in combination, at all steps of

9

the sequential evaluation. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996).

"It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004). "[T]he statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar v. Barnhart*, *supra,* 468 F.3d at 621 (*citing* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 416.920(a), 416.923, 416.945)(ruling that the ALJ's failure to consider the claimant's borderline personality disorder, "singly and in combination with her other impairments, requires that we reverse" as a misapplication of the law); *see also Clifton v. Chater*, *supra*, 79 F.3d at 1009 (reversing when the ALJ "did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three" as a "bare conclusion [was] beyond meaningful judicial review").   However, an ALJ's failure to discuss the applicability of a specific Listing is rendered harmless if findings elsewhere in his or her decision unambiguously negates a claim that an impairment satisfies that Listing.  *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (*citing Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005)).  A claimant has the burden to present evidence establishing his or her impairments meet or equal listed impairments. *Fischer-Ross v. Barnhart*, *supra*, 431 F.3d at 733.

When assessing whether Plaintiff has a medically severe impairment or combination of impairments, the ALJ did not specifically discuss his anxiety or personality disorder diagnoses as she determined that they "are better addressed under the above severe mental impairments" of bipolar disorder and cannabis dependence. [AR 18]  The ALJ analyzed only Listing 12.04, addressing Mood Disorders/Depressive Syndrome, and Listing 12.09, addressing Substance

Abuse. [AR 19]

I agree with the Commissioner, however, that the ALJ's failure to specifically address whether Plaintiff's medically determinable impairments of anxiety and borderline personality meet the requisite Listings (Listing 12.06 for the assessment of Anxiety-Related Disorders or Listing 12.08 addressing Personality Disorders) did not constitute reversible error, because the ALJ found that Plaintiff did not meet either the Paragraph B or Paragraph C criteria.  The ALJ found that Plaintiff did not meet the Paragraph B criteria (in that he did not have two areas of marked restriction/difficulties or repeated episodes of decompensation) and thus he could not meet the requirements of Listing 12.06 (which requires a Paragraph B finding). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.  In addition, the ALJ found that there was no evidence "of a complete inability to function independently outside the area of his home" [AR 19] and thus he could not meet the requirements of Listing 12.08 which requires either a Paragraph B finding or a complete inability to function outside of the home. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.  "A claimant will only be presumed disabled if an impairment, or a combination of impairments, meets or equals all the requirements of a listing."  *Best-Willie v. Colvin*, 514 F. App'x 728, 734 (10th Cir. 2013)(not selected for publication)(*citing Sullivan v. Zebley*, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).  Thus, while the ALJ did not specifically address whether Plaintiff's anxiety and personality disorder met the relevant listed impairment, such error was harmless.  *See Carpenter v. Astrue*, *supra*, 537 F.3d at 1268; *Fischer-Ross v. Barnhart*, *supra*, 431 F.3d at 733.

Furthermore, to the extent that Plaintiff argues that the ALJ's analysis "does not accurately reflect the significant limitations of his combined impairments" at Step Three, I

disagree.  First, this assertion is made by Plaintiff without any evidentiary support or argument.

*See generally Deason v. Colvin*, 2015 WL 5675305 (D. Colo. Sept. 28, 2015)(unpublished)

(noting that the claimant failed to specify any listing for which she believes her impairments

satisfy all medical criteria).  In addition, the ALJ's order indicates that she considered Plaintiff's

impairments in combination when determinating they do not meet or equal a Listing, and the

evidence of record is sufficient to support this finding. *Id.*

## B. Weighing of Opinion Evidence

Plaintiff also asserts that the ALJ erred in weighing the opinion evidence of record when

deciding whether his mental impairments meet or medically equal a listed impairment and when

assessing the non-physical limitations in his RFC.  Plaintiff first takes issue with the ALJ's

analysis of his treating physician opinions.

The opinion of a treating physician is generally "entitled to great weight because it

reflects expert judgment based on continuing observation of a patient's condition over a

prolonged period of time." *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D. Kan. 1996). When

deciding how much weight to give a treating source opinion, an ALJ must first determine

whether the opinion qualifies for "controlling" weight.  *Watkins v. Barnhart*, 350 F.3d 1297,

1300 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927(d)(2).  The analysis of how much weight to

accord a treating source opinion is sequential: an ALJ must first consider whether the opinion is

well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the

answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that

the opinion is well-supported, he must then confirm that the opinion is consistent with other

substantial evidence in the record.  "In other words, if the opinion is deficient in either of these

respects, then it is not entitled to controlling weight." *Watkins v. Barnhart, supra,* 350 F.3d at 1300; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)(*quoting* Social Security Ruling ("SSR") 96-2p).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart, supra,* 350 F.3d at 1301.

The ALJ determined that Dr. Marinelli was a treating physician in that he had provided Plaintiff individualized psychotherapy intermittently since 2007, he "has a longitudinal treatment history with the claimant, and [he] is an acceptable medical source pursuant to the Regulations." [AR 22]  It was Dr. Marinelli's opinion that "[w]hen compliant with his treatment plan, especially his medication regiment, [Plaintiff] can function safely and appropriately in the community.  However, his high levels of anxiety and depression and his low self-esteem significantly interfere with his ability to consistently participate in young adulthood." [AR 21] The ALJ gave "great weight to Dr. Marinelli's opinion as it is consistent with the above RFC and the medical evidence of the record as a whole." [AR 21-22]  In reviewing the ALJ's ruling, I note that to the extent Plaintiff asks that I consider Dr. Marinelli's subsequent "To Whom It May Concern" letter, dated October 29, 2013 and attached to his Opening Brief [Doc #61-1], I note

13

that this letter is not part of the Administrative Record in that the Appeals Council correctly

ruled that it post-dates the ALJ's decision and "[t]herefore, it does not affect the decision about

whether [Plaintiff] were disabled beginning on or before June 27, 2013" (the date of the ALJ's

decision). [AR 2]  *See* 20 C.F.R. §416.1470(b)(requiring that newly-submitted evidence shall

only be considered where it relates to the period on or before the date of the ALJ hearing

decision).

Plaintiff takes issue with the ALJ giving this opinion "great" weight as opposed to

"controlling" weight, and in failing to discuss why she did not do so.  However, it is clear that

the ALJ did not discount or in any way minimize Dr. Marinelli's opinion.  To the contrary, the

ALJ gave it full or controlling weight in that the general concerns raised by him – including

Plaintiff's inability to "consistently participate in young adulthood" – were incorporated into the

ALJ's assessment of the severity of Plaintiff's mental impairments and in his RFC.  Plaintiff's

assertion that Dr. Marinelli's "uncontroverted opinion supports a finding of disability" is a mis-

characterization.  Dr. Marinelli did not state any opinion about Plaintiff's functional abilities or

limitations related to his ability to work.  Rather, he opined that despite Plaintiff's need for short-

term hospitalizations to help manage his bipolar condition, he was able to live independently of

his parents and could function safely and appropriately in the community when on medications.

[AR 269] The ALJ's order reveals that she fully accepted Dr. Marinelli's opinion as to the

impact of Plaintiff's mental health impairments, and her failure to indicate as such (that she was

giving it "controlling weight") does not constitute error.  *See generally Pacheco v. Colvin*, 83 F.

Supp.3d 1157, 1162 (D. Colo. 2015)(noting that the term "reduced weight," when the ALJ's

order is view in context, "was meant to convey the ALJ's assessment that [a treating physician's]

opinion was not entitled to controlling weight").

Plaintiff also contends that the ALJ erred in assessing the opinion of his "long-term treating psychiatrist" Dr. Lerner.  Plaintiff asserts that it is Dr. Lerner's opinion that Plaintiff was "very disorganized, changing topics, interrupting, disjointed thoughts, some paranoia," was disheveled, appeared to have lost weight, and was "making accusations about charging for visits." [AR 260-67, 265]  These observations – made in Dr. Lerner's progress/treatment notes outside of the relevant time period  – do not constitute an opinion as to Plaintiff's limitations related to his mental impairments or his functional capacity. [AR 265]  As the Regulations indicate, "[m]edical opinions are statements from ... medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  As a result, the ALJ's "failure" to weigh Dr. Lerner's clinical notes as to Plaintiff's symptomology, which pre-date his onset date, as a treating physician's opinion is not error.  *See Welch v. Colvin*, 566 F. App'x 691, 693-94 (10th Cir. 2014)(not selected for publication)(ruling that none of the physicians identified by the plaintiff "provided medical opinions about her that, given her impairments, the ALJ was required to weigh"); *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012)(not selected for publication)(indicating treatment notes do not qualify as medical opinions).

Plaintiff also contends that the ALJ erred when weighing the non-treating physician opinions of record in assessing whether his mental impairments meet or medically equal a listed impairment and when determining his RFC.

"When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229 (D.Colo. 2012)(not reported). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(*citing* 20 C.F.R. §416.927(e)(2)(ii)).

Plaintiff first challenges the ALJ's giving "great weight" to the opinion of the examining consulting psychologist, Dr. Kutz. In her order, the ALJ first summarized Dr. Kutz's examination results, specifically noting that "[h]e over-elaborated attempting to make his case for his level of dysfunction" based on Dr. Kutz's findings that:

> He presents as somewhat dramatic, overelaborating on symptoms and frequently returning the focus to his dysfunction. There are certainly questions regarding the credibility of some of his symptom reports. He seems to readily admit to some significant dysfunction, such as psychosis, although when he is asked for details, there are no clear indications of such, or the statements that he makes do not seem compatible with his nonpsychotic presentation. [AR 22]

The ALJ noted Dr. Kutz's opinion as to Plaintiff's functionality as follow:

> Dr. Kutz opined that [Plaintiff's] basic cognitive functions were adequate and he seemed to function intellectually within the average range. He opined that [Plaintiff] could perform basic activities of daily living, although his instability might make this less than optional at times. Dr. Kutz noted that [Plaintiff's] medical records suggested he functioned well in a structured environment and could [function] at a higher level than his presentation. [AR 22]

The ALJ then set forth Dr. Kutz's ultimate opinion that:

> His mental disorders are chronic. He seems basically stable as this point. Any instability would seem to arise from his underlying personality disorder and associated impulsivity, reactivity and immaturity. Relative to a competitive work

16

environment setting throughout an eight-hour day, his attention, concentration, persistence and pace in task completion, and social adaptation would seem moderately impaired.  His understanding and memory do not show any impairment. [AR 22]

The ALJ gave great weight to this opinion – that acknowledged that Plaintiff "had functional limitations, but also noted throughout his report that [Plaintiff] magnified his symptoms and lacked credibility"– as Dr. Kutz was an examining and acceptable medical source, whose opinion was based on his own observations and objective findings, and the opinion was consistent with the assessed RFC, and the medical evidence in the record as a whole. [AR 22]

Plaintiff's brief lacks specific challenge to the ALJ's findings related to Dr. Kutz.  As an initial matter, I note that Dr. Kutz's opinion is not inconsistent with the opinion of Plaintiff's treating physician Dr. Marinelli, who opines that although his anxiety, depression and low self-esteem significantly interfere with his ability to consistently participate in young adulthood, Plaintiff  "can function safely and appropriately in the community" when compliant with his medication and treatment plan.  Accordingly, the ALJ did not improperly favor the opinion of the medical consultant over the opinion of the treating physician.  *See e.g. Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010)(not selected for publication).  Instead, Plaintiff contends that the ALJ "ignored" Dr. Kutz's assessment that Plaintiff's clinical presentation was due to his personality disorder and, in so doing, the ALJ erred when assessing the severity of his personality disorder.  However, as discussed above, I have found that the ALJ's assessment of Plaintiff's impairments medically determinable impairments (including his borderline personality disorder) did not constitute reversible error. In addition, I conclude that ALJ's assessment and weight given to Dr. Kutz's opinion applied the correct legal test and is supported

17

by substantial evidence.

Finally, Plaintiff contends that the ALJ erred in giving the opinion of Dr. Hanze, the state agency psychological consultant, "probative" weight.  The ALJ based this determination on the fact that it is "generally consistent with the above RFC and the medical evidence in the record as a whole" and that "Dr. Hanze reviewed the entire medial record and in an acceptable medical source who is familiar with our program of disability." [AR 22-3] in challenging this determination, Plaintiff again takes issue with the ALJ's conclusion that his anxiety and personality disorder were better addressed under Listing 12.04 and 12.09, which was in contrast to Dr. Hanze's analysis that assessed them under Listing 12.06 (for anxiety disorder) and Listing 12.08 (for personality disorders).  However, as discussed, I find that the ALJ did not commit reversible error in her assessment of Plaintiff's medically determinable impairments under the Listings.

To the extent that Plaintiff contends that the ALJ acted improperly to "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence," as is prohibited under *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008), I disagree.  The limitations found by Dr. Hanze in his initial determination of this matter (mild restriction of activities of daily living, moderate limitations in maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and had no repeated episodes of decompensation of extended duration) were consistent with those found by the ALJ except that she found marked (or greater) limitations in maintaining social functioning. Specifically, the ALJ determined that, when viewing the medical evidence of record in a light most favorable to Plaintiff, the ALJ gave Plaintiff "the benefit of the doubt and finds marked

18

restrictions in social functioning." [AR 23]

Furthermore, I note that Plaintiff's unsupported argument that Dr. Hanze's opinion is inconsistent with the other opinions and medical records is not borne out by the record.  Rather, Dr. Hanze's opinions as to Plaintiff's functional abilities are consistent with the opinions of Dr. Marinelli and Dr. Kutz that although Plaintiff's impairment cause him various limitations, as a general rule he can sufficiently function – particularly when he follows his treatment regiment – in a structured environment.  In conclusion, I find no error in the ALJ's assessment and weight given to the medical opinions contained in the record as she applied the correct legal standards and her findings are supported by substantial evidence in the record.  *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007)(ruling that even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views").

## C.  RFC Assessment

Plaintiff next asserts that the RFC assigned to him by the ALJ is not supported by substantial evidence.  He does not take issue with the ALJ's RFC's assessment that he could physically perform a full range of exertional work with some limitations; rather, he argues that he could not mentally perform the sustained requirements of work.

Plaintiff argues that the opinions of his treating and examining physicians reflected "chronic mental health issues resulting in great difficulty with mood stabilization, anxiety, difficulty with interpersonal relationships and remaining complaint with prescribed treatment." He also contends that his assessed GAF scores – ranging from 25-60 – largely indicate the existence of severe to moderate impairments.  Finally, Plaintiff argues that to the extent that the

19

ALJ attributed his problems to his cannabis dependence, such reliance was in error as the ALJ did not conduct the requisite drug and alcohol abuse analysis.

My review is limited as to whether the evidence is sufficient to support the ALJ's findings. While the record is clear that Plaintiff's mental health issues impinge on his functional abilities, the evidence does not show that he is limited in his ability to do sustained work. Plaintiff's attempt to point to evidence he argues supports his inability to do sustained work – such as his difficulty with mood stabilization, anxiety, interpersonal relationships and remaining complaint with his medications – is accounted for in the RFC mental limitations that he can perform only simple, repetitive and routine tasks with a maximum of SVP of 2, he cannot perform at a production rate pace, and he can have only occasional interaction with supervisors and co-workers, no interaction with the public, as well as that he can tolerate few changes in a routine work setting. [AR 20]

Moreover, to the extent that Plaintiff relies on his record GAF scores, I note that most of scores were assessed in connection with a hospitalization and, at any rate, were assessed prior to Plaintiff's onset date of August 28, 2012. Furthermore, GAF scores are not, standing alone, significant probative evidence because a GAF score does not necessarily indicate problems related to an ability to work or an ability to do sustained work. *Lopez v. Barnhart*, 78 F.App'x 675, 677-8 (10th Cir. 2003)(not selected for publication); *see also Zachary v. Barnhart*, 94 F.App'x 817, 819 (10th Cir. 2004)(not selected for publication)(finding the ALJ was not required to discuss the claimant's GAF rating in his RFC determination). Finally, I note that the ALJ's order does not indicate that she relied upon Plaintiff's cannabis dependence when assessing his RFC limitations. I conclude that the ALJ's RFC assessment, as related to

Plaintiff's functional limitations due to his mental health impairments including his ability to perform sustained work, is supported by substantial evidence.

## D.  Credibility Determination

Plaintiff also argues that the ALJ erred by improperly discrediting his subjective complaints in that she did not link her credibility finding – that his statements and testimony regarding the severity of his symptoms was not fully credible – to the record evidence. [AR 23]

Courts are to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Credibility determinations are peculiarly the province of the finder of fact, and courts will not upset such determinations when supported by substantial evidence. *McGoffin v. Barnhart,* 288 F.3d 1248, 1254 (10th Cir. 2002).

In assessing Plaintiff's credibility, the ALJ found that while his medically determinable impairments could reasonable be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. [AR 23]  In so doing, the ALJ noted that while she appreciated his ongoing mental health struggles, his statements regarding the severity of his symptoms was not credible based on the following rationale:

> Dr. Kutz [and Plaintiff's doctors during his hospitalizations] all noted that [Plaintiff's] brief periods of decompensation were related to his noncompliance with medications.  Dr. Kutz reported [Plaintiff] was dramatic, embellished his symptoms, and was not reliable.  Contrary to his doctor's advice, [Plaintiff] testified that he is not currently taking any psychotropic medications.  He testified that he has not used marijuana since high school yet the record shows that he was

21

still using marijuana in February 2012. The [ALJ] finds no objective findings in the medical record that would prevent him from returning to work within the restriction outlined in the above RFC. [AR 23]

I conclude that, contrary to Plaintiff's assertions, the ALJ's credibility determination is sufficient linked to evidence in the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)(deciding the ALJ's credibility assessment met legal standards when ALJ set forth specific evidence relied on in evaluating credibility).

**E. Step Five Determination**

Finally, Plaintiff asserts that the ALJ's ruling at Step Five of the sequential process – that Plaintiff's RFC allowed him to perform work that exists in significant numbers in the national economy – was not supported by substantial evidence.

Plaintiff appears to be arguing that his RFC should have contained moderate limitations of concentration, persistence and pace beyond those included by that ALJ (of only simple, repetitive and routine tasks with a maximum of SVP of 2, and he cannot perform at a production rate pace, although he can perform goal-oriented work). However, as discussed, I find no error by the ALJ in her determination of Plaintiff's RFC. Thus, because the vocational expert's testimony took into account his RFC limitations as assessed, it constituted sufficient evidence of the existence of jobs available to him at Step Five. *Sandoval v. Barnhart,* 209 F.App'x 820, 825 (10th Cir. 2006)(noting that "[h]ypothetical questions to a vocational expert need only include those limitations that the ALJ finds are established by substantial evidence")(*citing Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995)).

ACCORDINGLY, for the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: December __17__, 2015, in Denver, Colorado.

BY THE COURT:


   s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE